**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**

———————————————————————

GIULIO A. SANTORIO,

                        Plaintiff,

            v.                                            1:24-cv-359 (AMN/ML)

CARE.COM, INC. & IAC/INTERACTIVECORP,

                        Defendants.

———————————————————————

**APPEARANCES:**                              **OF COUNSEL:**

**GIULIO A. SANTORIO**
1248 Lowell Rd.
Schenectady, New York 12308
Plaintiff, *pro se*

**MINTZ, LEVIN, COHN, FERRIS,**            **JOHN C. CARTER, ESQ.**
**GLOVSKY & POPEO, P.C.**
919 Third Avenue
New York, New York 10022
*Attorneys for Defendants*

**Hon. Anne M. Nardacci, United States District Judge:**

**MEMORANDUM-DECISION AND ORDER**

**I.      INTRODUCTION**

        On March 15, 2024, *pro se* Plaintiff Giulio Santorio commenced this action against

Care.com, Inc. ("Care.com") and IAC/InteractiveCorp[1] ("IAC" and collectively with Care.com,

"Defendants") pursuant to the Age Discrimination in Employment Act of 1967 ("ADEA"), Title

———————————————————

[1] Defendants note in their motion to dismiss that "IAC Inc. is improperly named in the Amended
Complaint's caption as "IAC/Interactivecorp." *See* Dkt. No. 23-3 at 8. In his opposition, Plaintiff
notes that Defendant IAC/Interactivecorp's public filings refer to the company as "IAC Inc." *See*
Dkt. No. 26-1 at 7. Accordingly, the Clerk of the Court is directed to change Defendant IAC's
name to "IAC Inc." on the case docket and the Parties are directed to refer to Defendant IAC as
such in the future.

VII of the Civil Rights Act of 1964 ("Title VII"), the Americans with Disabilities Act of 1990 ("ADA"), and the New York State Human Rights Law ("NYSHRL") alleging various employment discrimination claims. *See* Dkt. No. 1 ("Complaint"). On April 30, 2024, Defendants moved to dismiss the Complaint pursuant to Fed. R. Civ. P. 12(b)(6), *see* Dkt. No. 14, and on May 20, 2024, Plaintiff filed an amended complaint as a matter of course pursuant to Fed. R. Civ. P. 15, which bolstered certain factual allegations and added a claim pursuant to the New York City Human Rights Law ("NYCHRL"). *See* Dkt. No. 19 ("Amended Complaint"). On June 20, 2024, Defendants renewed their motion to dismiss, tailored to the allegations set forth in the Amended Complaint. *See* Dkt. No. 23 ("Motion"). On July 26, 2024, Plaintiff filed a response in opposition to the Motion, *see* Dkt. No. 26, and on August 8, 2024, Defendants filed a reply in further support of the Motion, *see* Dkt. No. 29.[2] The Motion is now ripe for adjudication.

For the reasons that follow, the Motion is granted in part and denied in part.

## II.    BACKGROUND

Unless otherwise noted, the following facts are drawn from the Amended Complaint, its attachments, or materials it incorporates by reference, and Plaintiff's opposition to Defendants' motion to dismiss. *See Chambers v. Time Warner, Inc.*, 282 F.3d 147, 152 (2d Cir. 2002) (On a motion to dismiss, "the complaint is deemed to include any written instrument attached to it as an exhibit or any statements or documents incorporated in it by reference"); *Sommersett v. City of New York*, No. 09-CIV-5916, 2011 WL 2565301, at *3 (S.D.N.Y. June 28, 2011) ("[W]here a pro se plaintiff has submitted other papers to the Court, such as legal memoranda, the Court may

---

[2] On August 26, 2024, Plaintiff filed a Notice of Supplemental Authority, requesting that the Court take notice of a stipulated order for permanent injunction, other injunction, and other relief filed in the matter *F.T.C. v. Care.com*, *Inc.*, No. 1:24-cv-987 (W.D. Tex. Aug. 23, 2024). *See* Dkt. No. 30. The Court considers this supplemental authority to the extent that it is relevant.

consider statements in such papers to supplement or clarify the plaintiff's pleaded allegations"); *see also Walker v. Schult*, 717 F.3d 119, 122 n.1 (2d Cir. 2013) ("A district court deciding a motion to dismiss may consider factual allegations made by a pro se party in his papers opposing the motion."). The allegations are assumed to be true for purposes of ruling on the Motion, *see Div. 1181 Amalgamated Transit Union-N.Y. Emps. Pension Fund v. N.Y.C. Dep't of Educ.*, 9 F.4th 91, 94 (2d Cir. 2021) (*per curiam*), or are otherwise matters of public record, *Williams v. N.Y.C. Hous. Auth.*, 816 Fed. Appx. 532, 534 (2d Cir. 2020).

### A. The Parties

Plaintiff is a 57-year-old veteran and resident of Schenectady, New York who suffers from "severe hearing loss in both ears[] and diabetes." Dkt. No. 19 at 3.[3] On January 18, 2022, Plaintiff was hired as the Senior Director of Global Talent Management in Defendant Care.com's Human Resources department but was terminated on July 7, 2022. *See id.* ¶¶ 7, 14(a), 15(f)-(g), 25; *see also* Dkt. No. 26-1 at 14.

Defendant Care.com is a private company that operates an online marketplace for individuals to find and manage family care with a headquarters in Austin, Texas. *See* Dkt. No. 19 at ¶ 2. Care.com is a subsidiary of Defendant IAC. *Id.*

Defendant IAC is a public holding company that owns various businesses across the world with a headquarters in New York, New York. *Id.* at ¶ 3. IAC is the parent company of Defendant Care.com and is Care.com's sole shareholder. *Id.*; *see also* Dkt. No. 26-1 at 12.

---

[3] Citations to court documents utilize the pagination generated by CM/ECF, the Court's electronic filing system.

### B.  Plaintiff's Allegations

Plaintiff is a 57-year-old "decorated and esteemed disabled veteran," having previously served in the United States Army as an officer and aviator.  Dkt. No. 19 at ¶ 10.  Prior to beginning with Defendant Care.com, Plaintiff was employed by Amazon Web Services in a human resources role.  *See id.* at ¶ 10 (Plaintiff is "renowned for executing over 7000 hires annually at Amazon").

In December 2021, Plaintiff was solicited by Defendant Care.com to fill the role of Care.com's Senior Director of Global Talent Management.  *See id.* at ¶ 10.  Following this solicitation, Plaintiff submitted hiring documents and gave verbal notifications to Care.com regarding his hearing loss and diabetes, which Care.com's Senior Director of Human Resources "acknowledged."  *Id.* at ¶ 11.  Plaintiff ultimately accepted and began working in Care.com's "New York-based remote office" on January 18, 2022.  *See id.* at ¶ 14(a)-(b).

The Amended Complaint alleges that, as soon as he started with Care.com, Plaintiff was "met with a culture of blatant disrespect and rampant unprofessionalism, epitomized by the Defendant's executives' habitual use of profanity and discriminatory remarks."  *Id.* at ¶ 14(b).

Specifically, in March 2022, Plaintiff alleges that he conducted "an exhaustive investigation" into Care.com's decision to discharge a newly hired 54-year-old African American colleague, wherein Plaintiff was confronted with obstruction and "outright rejection from senior HR officials."  *Id.* at ¶ 15(b); *see also* Dkt. No. 26-1 at 13.  Also in March 2022, Plaintiff claims that he was on a call with Care.com executives wherein certain employees used profane language and yelled at Plaintiff, and during that discussion, Care.com's Chief Executive Officer Tim Allen asked Plaintiff, "Are you going to fight back?"  *Id.*; *see also* Dkt. No. 26-1 at 15.

Additionally, on May 3, 2022, Plaintiff reported an incident of discrimination based on alleged verbal abuse of a Hispanic female employee by a younger white male colleague.  *See id.*

at ¶ 15(a); *see also* Dkt. No. 26-1 at 14. The report was escalated to Care.com's Senior Director of Human Resources and Plaintiff's manager, and Plaintiff alleges that it was "met with a disheartening and persistent disregard" in violation of Care.com's antidiscrimination policies. *Id.*

On May 6, 2022, Plaintiff states that he took issue with certain racially insensitive remarks that were made during a company-sponsored Cinco de Mayo event, and his concerns were similarly "met with indifference." *Id.* at ¶ 15(c); *see also* Dkt. No. 26-1 at 14. While Plaintiff does not detail the nature of those remarks, he does claim that this incident "mark[ed] the beginning of documented retaliation." Dkt. No. 26-1 at 14.[4]

On June 15, 2022, Plaintiff submitted a report via email to his manager regarding the behavior of Care.com's Chief Financial Officer, who allegedly joined a video interview wearing a bath robe, asked one question to the candidate, and promptly ended the call. *See id.* at ¶ 15(e); *see also* Dkt. No. 19 Ex. D. The CFO's behavior apparently led the candidate to file a complaint with his recruiter. *See id.* According to Plaintiff, the CFO declined to hire the candidate despite unanimous support from other interviewers. *See id.*

On July 7, 2022, Plaintiff alleges that he was "abrupt[ly]" terminated from Care.com, along with other senior employees who allegedly reported discrimination, which IAC apparently told Plaintiff was due to a "necessity of a reduction in force." *Id.* at ¶ 15(f)-(g). Plaintiff claims that the close timing between the reports of discrimination and the terminations "constitute[] more than mere coincidence" and "raise[] serious concerns about the true motive behind the[] layoffs." *Id.* Plaintiff also contends that the close timing between his reports and the layoffs, as well as IAC's

---

[4] Also in May 2022, Plaintiff claims to have reported to his manager "irregularities in the financial and billing questions related to the MSS team," which was seemingly relevant to an ongoing litigation involving IAC subsidiaries. *Id.* at ¶ 15(d). In response, Plaintiff alleges that his manager "shrugged his shoulder and moved to the next subject without further discussions." *Id.*

public filings detailing significant revenue increases, establish that Care.com's financial justification for the layoffs was pretextual. *See id.* at ¶ 15(g); *see also* Dkt. No. 26-1 at 8.

On July 11, 2022, Plaintiff purportedly "attempted to resolve this matter with Care.com management" but received "no response." Dkt. No. 19 at ¶ 9. Plaintiff subsequently filed a charge with the United States Equal Employment Opportunity Commission ("E.E.O.C.") and received a Right to Sue Letter on January 21, 2023. *See id.*, Ex. A.

Based on the above allegations, the Amended Complaint brings the following causes of action: (1) disability discrimination under the ADA and NYSHRL; (2) age discrimination under the ADEA and NYSHRL; (3) retaliation under Title VII, the ADA, the ADEA, and NYSHRL; as well as (4) discrimination and retaliation under New York City Human Rights Law ("NYCHRL"). *Id.* at 7-8. Plaintiff seeks declaratory relief, a permanent injunction requiring Defendants to adopt policies that ensure equal employment opportunities, back pay, front pay, compensatory damages, and punitive damages, as well as associated fees and costs. *Id.* at 8-9.

### C. The Motion

Defendants' Motion is brought pursuant to Fed. R. Civ. P. 12(b)(6), asserting various arguments as to why the claims set forth in Plaintiff's Amended Complaint should be dismissed. *See generally* Dkt. No. 23. First, Defendants argue that Plaintiff's claims against IAC should be dismissed because IAC was never Plaintiff's employer. *See* Dkt. No. 23-3 at 13-15. Second, Defendants contend that Plaintiff's employment with Defendant Care.com bore no connection to New York City, and therefore his claim pursuant to NYCHRL should be dismissed. *See id.* at 15-17. Finally, Defendants argue that the Amended Complaint does not set forth plausible claims for discrimination, hostile work environment, or retaliation against either Care.com or IAC. *See id.* at 17-31.

## III.    STANDARD OF REVIEW

A motion to dismiss for failure to state a claim pursuant to Rule 12(b)(6) tests the legal sufficiency of a party's claim for relief.  *See Patane v. Clark*, 508 F.3d 106, 111-12 (2d Cir. 2007).  In considering legal sufficiency, a court must accept as true all well-pled facts in the complaint and draw all reasonable inferences in the pleader's favor.  *See ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87, 98 (2d Cir. 2007).   This presumption, however, does not extend to legal conclusions.  *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  Although a court's review of a motion to dismiss is generally limited to the facts presented in the pleadings, the court may consider documents that are "integral" to the pleadings even if they are neither physically attached to, nor incorporated by reference into, the pleadings.  *See Mangiafico v. Blumenthal*, 471 F.3d 391, 398 (2d Cir. 2006) (quoting *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 152-53 (2d Cir. 2002)).

To survive a motion to dismiss, a party need only plead "a short and plain statement of the claim," Fed. R. Civ. P. 8(a)(2), with sufficient factual "heft to sho[w] that the pleader is entitled to relief," *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 557 (2007) (alteration in original) (quotation omitted).  Under this standard, a pleading's "[f]actual allegations must be enough to raise a right to relief above the speculative level," *id.* at 555 (citation omitted), and present claims that are "plausible on [their] face," *id.* at 570.  "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678 (citation omitted).   "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of 'entitlement to relief.''" *Id.* (quoting *Twombly*, 550 U.S. at 557).  Ultimately, "when the allegations in a complaint, however true, could not raise a claim of entitlement to relief," *Twombly*, 550 U.S. at 558, or where a plaintiff has "not nudged [his or her] claims across the line from conceivable to plausible, [the] complaint must be dismissed," *id.* at 570.

"[I]n a *pro se* case . . . the court must view the submissions by a more lenient standard than that accorded to 'formal pleadings drafted by lawyers.'"  *Govan v. Campbell*, 289 F. Supp. 2d 289, 295 (N.D.N.Y. 2003) (quoting, *inter alia*, *Haines v. Kerner*, 404 U.S. 519, 520 (1972)).  The Second Circuit has held that courts are obligated to "'make reasonable allowances to protect *pro se* litigants'" from inadvertently forfeiting legal rights merely because they lack a legal education.  *Id*. (quoting *Traguth v. Zuck*, 710 F.2d 90, 95 (2d Cir. 1983)).

## IV.    DISCUSSION

### A.  Non-Merits Arguments

#### i.  Claims Against IAC

Defendants first argue that IAC should be dismissed as a defendant because IAC never acted as Plaintiff's employer.  *See* Dkt. No. 23-3 at 13-15.  In response, Plaintiff argues that IAC maintained significant control and influence over Care.com, including IAC's executives making hiring and firing decisions, and thus IAC is properly named pursuant to both the single employer and joint employer doctrines.  *See* Dkt. No. 26-1 at 11-12, 16, 21-22.

To sufficiently state any of his claims against IAC, Plaintiff must plausibly allege that IAC was his employer.  *See Juhua Han v. Kuni's Corp.*, No. 19-CV-6265, 2020 WL 2614726, at *6 (S.D.N.Y. May 22, 2020) (citing the standard for employer liability in Title VII, NYSHRL, and NYCHRL contexts); *see also Vitti v. Macy's Inc.*, 758 Fed. Appx. 153, 156 (2d Cir. 2018) (summary order) (ADA context).  As Plaintiff asserts, "there are two 'recognized doctrines that enable an employee in certain circumstances to assert employer liability against an entity that is not formally his or her employer.'"  *Shiflett v. Scores Holding Co.*, 601 Fed. Appx. 28, 30 (2d Cir. 2015) (quoting *Arculeo v. On-Site Sales & Mktg., LLC*, 425 F.3d 193, 197 (2d Cir. 2005)).  These are the single employer doctrine, "where two nominally separate entities are actually part of a single integrated enterprise," *Arculeo*, 425 F.3d at 198 (citation omitted), and the joint employer

doctrine, which does not involve a single integrated enterprise but rather "separate legal entities" that "handle certain aspects of their employer-employee relationship jointly," *id.* (alterations, quotation marks, and citation omitted). "A 'single employer' situation exists where two nominally separate entities are actually part of a single integrated enterprise." *Id.* (citation omitted). "[E]xamples may be parent and wholly-owned subsidiary corporations, or separate corporations under common ownership and management." *Id.* "To determine whether two separate entities should be considered a single employer for the purposes of employment discrimination claims, courts have relied on four considerations: (1) interrelation of operations; (2) centralized control of labor relations; (3) common management; and (4) common ownership or financial control." *Griffin v. Sirva, Inc.*, 835 F.3d 283, 292 (2d Cir. 2016) (citing *Cook v. Arrowsmith Shelburne, Inc.*, 69 F.3d 1235, 1240 (2d Cir. 1995)). Under the joint employer doctrine, an entity other than the employee's official employer may be liable where it "handle[s] certain aspects of their employer-employee relationship jointly." *Arculeo*, 425 F.3d at 198 (internal quotation marks omitted). "[F]actors courts have used to examine whether an entity constitutes a joint employer of an individual include commonality of hiring, firing, discipline, pay, insurance, records, and supervision." *Shiflett*, 601 Fed. Appx. at 30; *see also Vitti*, 758 Fed. Appx. at 156 (citing *NLRB v. Solid Waste Servs., Inc.*, 38 F.3d 93, 94 (2d Cir. 1994)). Liability under either theory is generally considered a question of fact. *See Brown v. Daikin Am., Inc.*, 756 F.3d 219, 226 (2d Cir. 2014); *see also Yousef v. Al Jazeera Media Network*, No. 16-cv-6416, 2018 WL 6332904, at *2 (S.D.N.Y. Oct. 31, 2018).

Here, Plaintiff first alleges that IAC and Care.com functioned as a single employer because, *inter alia*, IAC's public filings report Care.com's revenue "as part of its consolidated financial statements," reflecting "centralized control and significant integration" of the two companies. Dkt.

No. 26-1 at 21. Moreover, Plaintiff contends that Care.com's CEO is considered part of IAC's leadership team and that IAC issued Plaintiff's stock, managed his retirement benefits, and provided Plaintiff's healthcare plan. Dkt. No. 19 at ¶ 13(c). Plaintiff also alleges that IAC is "the sole shareholder of Care.com," meaning that Care.com is a wholly owned subsidiary of IAC. *Id.* at ¶ 12. In the alternative, Plaintiff argues that IAC and Care.com operated as joint employers because IAC "exerted substantial influence over employment decisions at Care.com." Dkt. No. 19 at ¶ 12. Plaintiff claims that IAC executives "were heavily involved in key employment matters, including hiring and firing decisions." *Id.* Particularly, IAC's Vice President of Talent was allegedly involved in Plaintiff's hiring, including serving as the "final decision maker" in Plaintiff's interview process, and was allegedly involved in other key employment decisions, as well. *Id.* at ¶ 13(a)-(b).

Under either theory, accepting the allegations set forth in the Amended Complaint and Plaintiff's opposition as true, and especially considering Plaintiff's *pro se* status, the Court finds that Plaintiff has made out a *prima facie* case that Defendant IAC was his employer "as he alleges that it is the parent company of his direct employer and [that] it was involved in personnel decisions." *Martin v. Designatronics Inc.*, No. 2:17-cv-4907, 2019 WL 482202, at *8 (E.D.N.Y. Feb. 7, 2019); *see also Echevarria v. Insight Med., P.C.*, 72 F. Supp. 3d 442, 458-59 (S.D.N.Y. 2014) ("the most common example of a 'single employer' or 'single integrated entity' is a parent and a wholly owned subsidiary") (citation omitted); *Green v. Jacob & Co. Watches, Inc.*, 248 F. Supp. 3d 458, 466 (S.D.N.Y. 2017) (joint employers found where, *inter alia*, employee alleged that he was hired by an executive of the other company and the other company made disciplinary or termination decisions).

Accordingly, to the extent that any of Plaintiff's claims survive on the merits against Defendant Care.com, they will be similarly allowed to proceed against Defendant IAC.[5]

### ii.  NYCHRL Claim

Next, Defendants argue that Plaintiff's claim pursuant to NYCHRL should be dismissed because Plaintiff has not sufficiently shown that his employment with Care.com bore any connection to New York City.  *See* Dkt. No. 23-3 at 15-17.  Plaintiff disagrees, contending that decisions affecting his employment, including alleged discriminatory decisions, were made in New York City and thus NYCHRL applies to his allegations.  *See* Dkt. No. 26-1 at 25.

"A non-New York City resident cannot avail him or herself of the protections of the City Human Rights Law unless he or she can demonstrate that the alleged discriminatory act had an impact within the City's boundaries." *Hardwick v. Auriemma*, 116 A.D.3d 465, 466-67 (1st Dep't 2014) (citing *Hoffman v. Parade Publs.*, 15 N.Y.3d 285, 289 (N.Y. 2010)); *see also Curto v. Med. World Commc'ns, Inc.*, 388 F. Supp. 2d 101, 109 (E.D.N.Y. 2005) ("[T]o determine the location of the discrimination under the NYCHRL, courts look to the location of the impact of the offensive conduct."). "[I]t is the place where the impact of the alleged discriminatory conduct is *felt* that controls whether the Human Rights Laws apply, not where the decision is *made*." *Id.* at 467 (citing *Hoffman*, 15 N.Y.3d at 290-92) (emphasis added); *see also Vangas v. Montefiore Med. Ctr.*, 823 F.3d 174, 183 (2d Cir. 2016) ("Under the NYCHRL the impact of the employment action must be felt by the plaintiff in NYC.") (citation and emphasis omitted).

---

[5] The Court notes that "[e]ven where two companies are deemed a joint employer, it is not necessarily the case that both are liable for discriminatory conduct." *Goodman v. Port Auth. of N.Y. & N.J.*, 850 F. Supp. 2d 363, 387 (S.D.N.Y. 2012).  Thus, Defendants will be entitled to refute through discovery Plaintiff's allegations that Care.com and IAC operate as a single employer or are joint employers or that IAC should otherwise be liable for Care.com's conduct.

Plaintiff is a resident of Schenectady and at all relevant times was employed by Defendants on a remote basis. *See* Dkt. No. 19 at ¶¶ 1(a), 14(a). Because Plaintiff alleges only that the alleged discriminatory decisions were "made or implemented in New York City," Dkt. No. 26-1 at 25, and does not allege that he felt the impact of those decisions in New York City, Plaintiff cannot assert claims under NYCHRL.

Accordingly, Plaintiff's NYCHRL claim is dismissed.

**B. Merits Arguments**

    **i. Age and Disability Discrimination Claims**

Plaintiff's first and second causes of action allege that Defendants discriminated against him based on his age and disabilities when they terminated him in July 2022, in violation of the ADA, the ADEA, and NYSHRL. *See* Dkt. No. 19 at 7. Defendants move to dismiss all of Plaintiff's discrimination claims, contending that Plaintiff has failed to connect his age or purported disabilities to his termination. *See* Dkt. No. 23-3 at 17-21.[6]

Under the ADEA, it is "unlawful for an employer . . . to fail or refuse to hire or to discharge any individual or otherwise discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's age." 29 U.S.C. § 623(a)(1). This protection covers "individuals who are at least 40 years of age." *Id.* § 631(a). In addition, the ADA provides that "[n]o covered entity shall discriminate against a qualified individual on the basis of disability in regard to job application procedures, the hiring,

---

[6] While Defendants do not concede that Plaintiff suffers from one or more recognized disability under the ADA, or that Defendant Care.com had knowledge of Plaintiff's purported disabilities, they chose not to rely on those arguments as a basis for dismissal. *See* Dkt. No. 23-3 at 20 ("Even if Plaintiff had one or more disabilities and Care was aware of them, Plaintiff has not even made a nominal effort to plead that his purported disabilities were tied to his termination").

advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment." 42 U.S.C. § 12112(a).

"The pleading standards to establish a *prima facie* case of discrimination under the ADEA [and the] ADA . . . are similar." *Brown v. N.Y.C. Dep't of Educ.*, No. 20-CV-2424, 2022 WL 6559760, at * 6 (S.D.N.Y. Sept. 1, 2022). To state an ADEA discrimination claim, a plaintiff must allege that (1) he or she was "within the protected age group," (2) he or she was "qualified for the position," (3) he or she "experienced adverse employment action," and (4) "such action occurred under circumstances giving rise to an inference of discrimination." *Green v. Town of E. Haven*, 952 F.3d 394, 403 (2d Cir. 2020) (quoting *Gorzynski v. JetBlue Airways Corp.*, 596 F.3d 93, 107 (2d Cir. 2010)). To state an ADA discrimination claim, a plaintiff must demonstrate that (1) his or her employer is subject to the ADA; (2) he or she was disabled within the meaning of the ADA; (3) he or she was otherwise qualified to perform the essential functions of the job, with or without reasonable accommodation; and (4) he or she suffered an adverse employment action because of the disability. *Sista v. CDC Ixis N. Am., Inc.*, 445 F.3d 161, 169 (2d Cir. 2006) (quoting *Giordano v. City of New York*, 274 F.3d 740, 747 (2d Cir. 2001)).

Claims of discrimination under the NYSHRL have traditionally been analyzed under the same standards as its federal counterparts. *See Graves v. Finch Pruyn & Co.*, 457 F.3d 181, 184 n.3 (2d Cir. 2006). However, "[t]he New York State Legislature passed several amendments to the NYSHRL in June 2019, the effect of which is to render the standard for claims closer to the standard of the NYCHRL." *Livingston v. City of New York*, 563 F. Supp. 3d 201, 232 n.14 (S.D.N.Y. 2021). As a result of the 2019 amendments, "the standard for [NYSHRL discrimination] claims [is] closer to the standard of the NYCHRL." *Edelman v. NYU Langone Health Sys.*, No. 21-Civ-502, 2022 WL 4537972, at *14 (S.D.N.Y. Sept. 28, 2022) (citation and

quotation marks omitted); *see also Cooper v. Franklin Templeton Invs.*, No. 22-2763, 2023 WL 3882977, at *3 (2d Cir. June 8, 2023) (summary order) ("While New York courts have not yet produced any substantive analysis of how this amendment changes standards of liability under the NYSHRL, some courts in this Circuit have interpreted the amendment as rendering the standard for claims closer to the standard of the NYCHRL."). Unlike the ADA or the ADEA, the NYCHRL does not require a plaintiff alleging discrimination to prove he or she suffered an adverse employment action. *See Mihalik v. Credit Agricole Cheuvreux N. Am., Inc.*, 715 F.3d 102, 114 (2d Cir. 2013) (emphasis added). Rather, "the plaintiff need only show differential treatment -- that []he is treated 'less well' -- because of a discriminatory intent." *Id.* at 110 (citing *Williams v. N.Y.C. Hous. Auth.*, 61 A.D.3d 62, 77 (1st Dep't 2009)). Even under the more liberal NYCHRL standard, however, plaintiffs must still allege facts that give rise to "a minimal inference of discriminatory motivation." *Cruz v. Local 32BJ*, No. 22-Civ-3068, 2024 WL 4357036, at *19 (S.D.N.Y. Sept. 30, 2024) (quoting *Littlejohn*, 795 F.3d at 311); *see also Ward v. Cohen Media Publ'ns LLC*, No. 22-cv-06431, 2023 WL 5353342, at *15 (S.D.N.Y. Aug. 21, 2023) ("[E]ven under the more lenient requirements of the NYCHRL, [a] plaintiff's claims must be more than conclusory or speculative to survive a motion to dismiss.") (original brackets and citation omitted).

Reading the allegations in the Amended Complaint in the light most favorable to Plaintiff and affording him leniency as a *pro se* litigant, the Court nevertheless finds that Plaintiff has failed to adequately state a claim for age or disability discrimination, even under the more liberal NYSHRL standard.

As an initial matter, the Parties do not dispute that Plaintiff was in the ADA's protected age group, was qualified for the position of Senior Director of Global Talent Management, that at least Defendant Care.com was Plaintiff's employer, and that Plaintiff's June 2022 termination

constituted an adverse employment action. *See generally* Dkt. No. 23. The only dispute is whether Plaintiff has adequately pled that his termination was motivated by discriminatory animus. Defendants claim that "Plaintiff points to no one outside of his protected group who was allegedly treated more favorably than he was, nor does he allege that he was similarly situated in any material way to such individuals," and that "the Amended Complaint never alleges that Care considered his purported disabilities at all when it terminated him." Dkt. No. 23-3 at 19-20. Plaintiff counters that an inference of discrimination is sufficiently shown by Plaintiff's allegations regarding "discriminatory remarks and actions by senior executives, the timing of his termination shortly after reporting discriminatory and unprofessional conduct, and the differential treatment to younger, non-disabled employees." Dkt. No. 26-1 at 24.

With respect to Plaintiff's contention that discriminatory motivation should be inferred from certain remarks and actions by senior executives, the Amended Complaint alleges only one such remark or action by a senior executive—a statement made by Defendant Care.com's CEO during a meeting that occurred nearly five months prior to Plaintiff's termination as to whether Plaintiff was going to "fight back" after Plaintiff was allegedly subjected to profane language and yelling by other executives. *See* Dkt. No. 26-1 at 15-16. Plaintiff fails to allege that the remarks by the CEO were discriminatory in nature, as opposed to merely profane. Indeed, Plaintiff does not set forth a single concrete comment or action by any of Defendants' representatives, negative or otherwise, that could plausibly be connected in any way to Plaintiff's age or disabilities. *See generally* Dkt. Nos. 19, 26-1. And in any event, "stray comments . . . do not create an inference

of discrimination." *Dixon v. Int'l Fed'n of Accountants*, 416 Fed. Appx. 107, 110 (2d Cir. 2011)

(citing *Danzer v. Norden Systems, Inc.*, 151 F.3d 50, 56 (2d Cir. 1998)).[7]

      With respect to Plaintiff's allegation that the timing of his termination gives rise to an

inference of discrimination because it occurred shortly after he reported discriminatory and

unprofessional conduct, the Court notes that such an argument is more appropriately raised with

respect to a retaliation, rather than a discrimination, theory. *See* discussion, *infra*, Section

IV(B)(iii). Regardless, the reports of discriminatory and unprofessional conduct on which

Plaintiff's temporal proximity argument relies do not appear to pertain to misconduct based on age

or disability, let alone *Plaintiff's* age or disabilities. *See* Dkt. No. 26-1 at 13-15 (describing

complaints concerning the termination of an African American employee, the verbal abuse of a

Hispanic female employee, certain race-related statements made during a company cultural event,

and the inappropriate workplace behavior of a female executive). Without more, it is impossible

for the Court to infer that Defendants had even minimal ageist or ableist intentions when they laid

off various individuals including Plaintiff in July 2022. And as Defendants properly point out, a

discrimination theory based on timing is undermined by the fact that Plaintiff was hired when he

was roughly the same age as when he was terminated and was experiencing the same disabilities.

*See, e.g.*, *O'Connor v. Viacom Inc./Viacom Int'l Inc.*, No. 93-CIV-2399, 1996 WL 194299, at *7

---

[7] With respect to allegations pertaining to remarks, the Court cannot determine whether to infer a discriminatory bias based on remarks alone unless those allegations are specific and identify (i) who made the remark, (ii) when the remark was made, (iii) the content of the remark, or (iv) the context in which the remark was made. *See Fried v. LVI Servs., Inc.*, 500 Fed. Appx. 39, 41 (2d Cir. 2012) (highlighting that "whether it was related to the decision-making process" is a relevant factor in determining whether a defendant's remark suggests discriminatory bias); *see also Williams v. Victoria's Secret*, No. 15-CV-4715, 2017 WL 384787, at *9 (S.D.N.Y. Jan. 27, 2017), *report and recommendation adopted*, No. 15-CV-4715, 2017 WL 1162908 (S.D.N.Y. Mar. 28, 2017) ("Even cases where co-workers and supervisors make negative remarks about an individual's attributes do not demonstrate the requisite discriminatory intent where there is no 'causal nexus' between the comments and the decision to terminate the plaintiff.").

(S.D.N.Y. Apr. 23, 1996) ("inference of discrimination is much weaker where the plaintiff employee is well within the protected class when first hired.") (citing *Stanojev v. Ebasco Servs., Inc.*, 643 F.2d 914, 921 (2d Cir. 1981)); *Nance v. City of N.Y.*, 09-CV-2786, 2011 WL 2837491, at *4 (E.D.N.Y. July 14, 2011) (inference of age discrimination was significantly undermined by the fact that plaintiff was already over forty when initially hired). *see also Rinsler v. Sony Pictures Entm't*, No. 02-Civ-4096, 2003 WL 22015434, at *6 (S.D.N.Y. Aug. 25, 2003) (finding no "suspicious timing" where relying solely on temporal proximity, and the termination occurred three months after company found out about pregnancy).

Finally, regarding Plaintiff's allegation that he was treated differently than his younger, non-disabled employees, the Amended Complaint similarly lacks detail sufficient to infer that such differential treatment was discriminatory in nature. While Plaintiff may plead bias through Defendants' treatment of other employees outside of Plaintiff's protected classes, he must set forth at least some facts alleging that he was similarly situated to the individuals with whom he seeks to compare himself. *See Graham v. Long Island R.R.*, 230 F.3d 34, 39 (2d Cir. 2000); *see also McGuinness v. Lincoln Hall*, 263 F.3d 49, 53-55 (2d Cir. 2001) ("[W]here a plaintiff seeks to establish the minimal *prima facie* case by making reference to the disparate treatment of other employees, those employees must have a situation sufficiently similar to plaintiff's to support at least a minimal inference that the difference of treatment may be attributable to discrimination."). The Amended Complaint lacks any contentions regarding how younger, non-disabled employees were treated differently from Plaintiff. For example, Plaintiff does not allege that younger or non-disabled employees were left out of the layoffs that resulted in Plaintiff's termination. Without allegations regarding the employment characteristics of the individuals outside of Plaintiff's class, or any contentions regarding how those individuals were treated differently from Plaintiff, the

17

Court cannot infer a discriminatory bias based on a disparate treatment theory. *See Connaughton v. Mt. Vernon City Sch. Dist.*, No. 21-Civ-692, 2024 WL 1702148, at *6 (S.D.N.Y. Apr. 18, 2024) (quoting *Shumway v. United Parcel Serv., Inc.*, 118 F.3d 60, 64 (2d Cir. 1997)) ("Under Second Circuit law, where a plaintiff seeks to make out a case of discrimination 'by pointing to the disparate treatment of a purportedly similarly situated employee, the plaintiff must show that he shared sufficient employment characteristics with that comparator so that they could be considered similarly situated.'"); *see also Karunakaran v. Borough of Manhattan Community College*, No. 18-Civ-10723, 2022 WL 902370, at *4 (S.D.N.Y. Mar. 28, 2022) (outlining requirements for a *prima facie* discrimination case premised on a disparate treatment theory); *compare Davey v. Jones*, No. 06-Civ-4206, 2007 WL 1378428, at *2 (S.D.N.Y. May 11, 2007) (claim survived where plaintiff allegedly was fired without cause at age sixty two, after sixteen years of employment, while firm continued to hire and employ attorneys under the age of forty).

Overall, the Amended Complaint is devoid of any plausible allegations that show that Plaintiff's age or disability status was a factor in his termination or that Plaintiff was ever treated "less well" because of his age or disabilities. Plaintiff relies on a single conclusory allegation that "younger, non-disabled employees" were treated differently than Plaintiff, and the Amended Complaint does not set forth a single instance of "comments, stereotyping, or other indications of animus based on" Plaintiff's age or disabilities. *Wesolowski v. Polish Comm. Ctr. of Buffalo, Inc.*, No. 1:21-CV-751, 2022 WL 6784611, at *9 (W.D.N.Y. Aug. 12, 2022); *see also Spataro v. Glenwood Supply*, No. 10-CV-4792, 2011 WL 13175928, at *6 (E.D.N.Y. Sept. 12, 2011) ("Courts in this Circuit have made it clear that even where the *pro se* plaintiff's claims are viewed in the most favorable light and the *pro se* plaintiff's status is considered, there must still be specific

factual allegations of discrimination sufficient to satisfy the minimum pleading standards of Fed. R. Civ. P. 8.") (citations and quotations omitted).

Accordingly, Plaintiff's discrimination claims pursuant to the ADA, the ADEA, and NYSHRL are dismissed without prejudice for failure to state a claim.

### ii. Hostile Work Environment Claims

While Plaintiff does not set forth separate causes of action for hostile work environment, the Amended Complaint states as part of Plaintiff's discrimination claim that he was "subject[ed] . . . to a hostile work environment." *See* Dkt. No. 19 at 7. Bearing in mind Plaintiff's *pro se* status, and given that Defendants' Motion affirmatively seeks dismissal of a hostile work environment claim, *see* Dkt. No. 23-3 at 21-23, the Court chooses to read the Amended Complaint to bring separate causes of action for hostile work environment under federal and New York State law.

To establish a federal claim for hostile work environment claim, a plaintiff must demonstrate: "(l) that the harassment was sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment, and (2) that a specific basis exists for imputing the objectionable conduct to the employer." *Alfano v. Costello*, 294 F. 3d 365, 373 (2d Cir. 2002) (internal quotations and citations omitted); *see also Bethea v. JP Morgan Chase & Co.*, No. 15-CV-3544, 2019 WL 4805141, at *10 n.18 (E.D.N.Y. Sept. 30, 2019) ("Hostile work environment claims under the ADA and ADEA are evaluated under the same standards."). "This standard has both objective and subjective components: the conduct complained of must be severe or pervasive enough that a reasonable person would find it hostile or abusive, and the victim must subjectively perceive the work environment to be abusive." *Littlejohn*, 795 F.3d at 321 (citing *Raspardo v. Carlone*, 770 F.3d 97, 114 (2d Cir. 2014)). "In considering whether a plaintiff has met this burden, courts should examine the totality of the circumstances, including: the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a

mere offensive utterance; and whether it unreasonably interferes with the victim's job performance." *Rivera v. Rochester Genesee Reg'l Transp. Auth.*, 743 F.3d 11, 20 (2d Cir. 2014) (internal quotations, alterations, and citation omitted).

The 2019 NYSHRL amendments eliminated the requirement recognized under federal law that, to state a hostile work environment claim, a plaintiff must adequately plead that the alleged conduct was "sufficiently severe or pervasive" to alter the conditions of the victim's employment. *Tortorici v. Bus-Tev, LLC*, No. 17-CV-7507, 2021 WL 4177209, at *13 (S.D.N.Y. Sept. 14, 2021) (citing N.Y. Exec. Law § 300). Now, to state a viable NYSHRL hostile work environment claim, a plaintiff must plausibly allege only "that he or she was subjected to inferior terms, conditions, or privileges of employment because of the individual's membership in one or more protected categories." *Id.*; *see also Alvarado v. United Hospice, Inc.*, 631 F. Supp. 3d 89, 119 n.16 (S.D.N.Y. 2022). Thus, as with discrimination claims, district courts have recently held that the NYSHRL hostile work environment standard is now similar to the NYCHRL standard, where a plaintiff "need only show that the employer treated her 'less well than other employees, at least in part for a discriminatory reason.'" *Espinoza v. CGJC Holdings LLC*, No. 23-CV-9133, 2024 WL 3520662, at *5 (S.D.N.Y. July 23, 2024) (quoting *Williams v. N.Y.C. Hous. Auth.*, 61 F.4th 55, 70 (2d Cir. 2023)). However, "neither the NYSHRL nor NYCHRL is a 'general civility code,'" *Mercado v. Mount Sinai Beth Israel*, No. 1:21-cv-10467, 2023 WL 5975322, at *12 (S.D.N.Y. Sept. 14, 2023) (citation omitted), and neither standard applies to conduct that "a reasonable victim of discrimination would consider petty slights and trivial inconveniences," *Williams*, 61 F.4th at 69 (citation omitted).

Notably, the most liberal NYCHRL standard "does not distinguish between claims of 'discrimination' and 'harassment' or hostile work environment." *Mitura v. Finco Servs., Inc.*, 712

F. Supp. 3d 422, 452 n.3 (S.D.N.Y. 2024) (citing *Williams*, 61 A.D.3d at 75); *see also Doolittle v. Bloomberg L.P.*, No. 22-cv-09136, 2023 WL 7151718, at *8 (S.D.N.Y. Oct. 31, 2023) ("Under the NYCHRL, the standard for a hostile-work-environment claim is the same as for a discrimination claim."). Therefore, because "the standards for a hostile work environment claim and discrimination claim under the NYCHRL are identical in every respect," *Charles v. City of N.Y.*, No. 21-Civ-5567, 2023 WL 2752123, at *8 (S.D.N.Y. Mar. 31, 2023), and since the NYSHRL standard is now considered to be "close[ ] to the standard of the NYCHRL," *Mitura*, 2024 WL 232323, at *4 n.4 (citation omitted), Plaintiff fails to state a plausible NYSHRL hostile work environment claim because he fails to state a plausible NYSHRL discrimination claim. *See, e.g.*, *Mitchell v. Planned Parenthood of Greater N.Y., Inc.*, 745 F. Supp. 3d 68, 107-08 (S.D.N.Y. 2024) (dismissing NYSHRL hostile work environment claim where Plaintiff failed to state a discrimination claim under NYCHRL's more liberal standard). And it follows that, since Plaintiff cannot satisfy the more lenient post-2019 NYSHRL standard for a hostile work environment claim, he similarly cannot satisfy the stricter federal standards.

Accordingly, Plaintiff's hostile work environment claims are dismissed without prejudice for failure to state a claim.

### iii.    Retaliation Claims

Finally, Plaintiff states that Defendants are liable under Title VII, the ADA, the ADEA, and NYSHRL for retaliation. *See* Dkt. No. 19 at 7. Defendants argue in the Motion that a retaliation claim under any statute should be dismissed because Plaintiff does not allege that he engaged in any protected activity and since Plaintiff fails to allege that any purported retaliation was the but-for cause of his termination. *See* Dkt. No. 23-3 at 23-29.

It is well settled that retaliation claims under Title VII, the ADEA, and the ADA are analyzed under the same framework. *Smith v. N.Y.C. Dep't of Educ.*, No. 18-Civ-8545, 2019 WL

6307471, at *11 (S.D.N.Y. Nov. 25, 2019) (citing *Cerni v. J.P. Morgan Sec. LLC*, 208 F. Supp.

3d 533, 538 (S.D.N.Y. 2016); *Treglia v. Town of Manilus*, 313 F.3d 713, 719 (2d Cir. 2002);

*Weixel v. Bd. of Educ. of City of N.Y.*, 287 F.3d 138, 148 (2d Cir. 2002)); *Murtha v. N.Y.S. Gaming*

*Comm'n*, No. 17-Civ-10040, 2019 WL 4450687, at *14 (S.D.N.Y. Sept. 17, 2019).  To establish

a *prima facie* case, a complaint must plausibly allege that: "[1] the employee engaged in a protected

activity; [2] the employer was aware of that activity; [3] the employee suffered an adverse

employment action; and [4] there was a causal connection between the protected activity and the

adverse employment action."  *Dickens v. Hudson Sheraton Corp., LLC*, 167 F. Supp. 3d 499, 522

(S.D.N.Y. 2016) (quotation marks omitted) (citing *Blanco v. Brogan*, 620 F. Supp. 2d 546, 553

(S.D.N.Y. 2009)) (Title VII and ADEA); *see Muller v. Costello*, 187 F.3d, 298, 311 (2d Cir. 1999)

(ADA).  With respect to the fourth element,

> Proof of causal connection can be established indirectly by showing that the
> protected activity was followed closely by discriminatory treatment ... or through
> other evidence such as disparate treatment of fellow employees who engaged in
> similar conduct, or directly through evidence of retaliatory animus directed against
> a plaintiff by the defendant.

*De Cintio v. Westchester Cnty. Med. Ctr.*, 821 F.2d 111, 116 (2d Cir. 1987) (internal citations

omitted).  The Second Circuit "has not drawn a bright line to define the outer limits beyond which

a temporal relationship is too attenuated to establish a causal relationship between the exercise of

a federal constitutional right and an allegedly retaliatory action."  *Gorman-Bakos v. Cornell Coop.*

*Extension*, 252 F.3d 545, 554 (2d Cir. 2001).

    As with other NYSHRL claims, the 2019 amendments modified the standard for NYSHRL

retaliation claims to make it closer to the standard under the NYCHRL.  *See Meckeler v. Cornell*

*Univ.*, No. 23-CV-773 (FJS/ML), 2024 WL 3535488, at *11 (N.D.N.Y. July 25, 2024) ("[F]or

claims that accrue on or after the effective date of the NYSHRL October 11, 2019 amendments,

the standard for such claims is 'closer to the standard under the NYCHRL.'" (quoting *Wellner v.*

*Montefiore Med. Ctr.*, No. 17-Civ-2479, 2019 WL 4081898, at *5 n.4 (S.D.N.Y. Aug 29, 2019));

*see also Thompson v. Shutterstock, Inc.*, No. 23-CV-4155, 2024 WL 2943813, at *25 (S.D.N.Y.

June 10, 2024) ("[T]he legislature amended the NYSHRL in 2019, and thus any claims based upon

acts of . . . retaliation that occurred after October 11, 2019 are analyzed under a different

standard.").  Under the post-amendment NYSHRL, a plaintiff pleading retaliation must show that:

(1) she participated in a protected activity; (2) the defendant knew about her participation in a

protected activity; (3) the employer engaged in conduct that was reasonably likely to deter a person

from engaging in a protected activity; and (4) a causal connection existed between the protected

activity and the defendant's conduct.  *See Palmer v. eCapital Corp.*, No. 23-CV-4080, 2024 WL

3794715, at *11 (S.D.N.Y. Aug. 13, 2024); *see also Wright v. City of New York*, No. 23-CV-3149,

2024 WL 3952722, at *10 (S.D.N.Y. Aug. 27, 2024) (explaining that "[r]etaliation victims are

provided with broader protection under the NYCHRL — and . . . under the post-amendment

NYSHRL — than their federal counterpart" because under those statutes a "plaintiff need not

prove any 'adverse' employment action; instead, [she] must prove that something happened that

would be reasonably likely to deter a person from engaging in protected activity").  Compared to

the federal standards, the more lenient NYCHRL standard "requires only conduct that is

'reasonably likely to deter a person from engaging in' protected activity, not a materially adverse

change in the terms and conditions of the plaintiff's employment, and second, the NYCHRL

[retaliation standard] imposes a more lenient 'motivating factor' causation standard, rather than

requiring but-for causation."  *Penzo v. Consolidated Edison Co. of N.Y., Inc.*, No. 1:19-CV-07478,

2024 WL 3824072, at *11 (S.D.N.Y. Aug. 15, 2024) (quoting *Mihalik*, 715 F.3d at 110 n.8, 112,

116) (additional citation omitted).

Here, Plaintiff alleges that he reported several instances of workplace misconduct in the months leading up to his termination. *See* Dkt. No. 26-1 at 13-14. First, Plaintiff alleges that, in March 2022, he conducted "an exhaustive investigation" into Care.com's decision to discharge a newly hired 54-year-old African American colleague, which Plaintiff claims was met with obstruction. Dkt. No. 19 at at ¶ 15(b); Dkt. No. 26-1 at 13. Second, Plaintiff claims that, on May 3, 2022, he reported a young white male colleague's verbal abuse against a Hispanic female employee to Care.com's Senior Director of Human Resources and Plaintiff's manager. Dkt. No. 19 at ¶ 15(a); Dkt. No 26-1 at 12-13. Third, Plaintiff alleges that he filed a "complaint" on May 6, 2022 following a company Cinco de Mayo event wherein "racially insensitive incidents" took place. Dkt. No. 19 at ¶ 15(c); Dkt. No. 26-1 at 13. Finally, Plaintiff also asserts that, on June 15, 2022, he reported to his manager that Defendant Care.com's CFO engaged in unprofessional conduct during a candidate interview when she appeared on a remote meeting in bathrobe and abruptly ended the interview after only asking one question. *See* Dkt. No. 26-1 at 14; *see also* Dkt. No. 19 at ¶ 15(e). Plaintiff was terminated less than a month later, on July 7, 2022. *See* Dkt. No. 26-1 at 14.

The "protected activity" element of a federal retaliation claim is satisfied where the plaintiff has "a good faith, reasonable belief that he was opposing an employment practice made unlawful" by Title VII, the ADA, or the ADEA. *Kessler v. Westchester Cnty. Dep't of Soc. Servs.*, 461 F.3d 199, 210 (2d Cir. 2006) (quoting *McMenemy v. City of Rochester*, 241 F.3d 279, 285 (2d Cir.2001)). This includes making complaints to management. *See La Grande v. DeCrescente Distrib. Co., Inc.*, 370 Fed. Appx. 206, 212 (2d Cir. 2010) (citing *Sumner v. U.S. Postal Serv.*, 899 F.2d 203, 209 (2d Cir. 1990)) ("The law protects employees in the filing of formal charges of discrimination as well as in the making of informal protests of discrimination, including

24

complaints to management.").  And even where a plaintiff is not a member of the same protected class as the individual who was the victim of the hostile or discriminatory behavior, the plaintiff's report of such behavior constitutes a protected activity in the retaliation context.  *See, e.g.*, *Sherman v. Fivesky, LLC*, No. 19-cv-8015, 2020 WL 2136227, at *15 (S.D.N.Y. May 5, 2020) (citing *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 67 (2006)).  Viewing the evidence in the light most favorable to Plaintiff and affording him leniency as a *pro se* litigant, the Court finds that, at the very least, Plaintiff's allegations that he reported racially inappropriate or discriminatory behavior to management are sufficient to plead that he engaged in protected activity.[8]

Additionally, with respect to the causal element of a retaliation claim, it is sufficient for Plaintiff to "plausibly plead a connection between the act and his engagement in protected activity," *Vega v. Hempstead Union Free Sch. Dist.*, 801 F.3d 72, 90 (2d Cir. 2015) (citing 42 U.S.C. § 2000e–3(a)), which "can be shown indirectly by timing: protected activity followed closely in time by adverse employment action," *id.* (citing *Cifra v. Gen. Elec. Co.*, 252 F.3d 205, 217 (2d Cir. 2001)).  And while there is no firm outer limit to the temporal proximity required, the Second Circuit has previously held "that five months is not too long to find the causal relationship." *Gorzynski v. JetBlue Airways Corp.*, 596 F.3d 93, 110 (2d Cir. 2010).

Here, Plaintiff claims that he reported instances of potential discrimination within four months of his termination.  Therefore, at this juncture, the Court finds that he has adequately pled that Defendants terminated him in retaliation for making those reports.  And since Plaintiff has

---

[8] Of course, to the extent that discovery bears out that Plaintiff merely complained of general mistreatment or activity not otherwise protected under the relevant statutes, the retaliation claim may not survive.  *See Newsome v. IDB Cap. Corp.*, No. 13-CV-6576, 2016 WL 1254393, at *25 (S.D.N.Y. Mar. 28, 2016) (citing cases).  However, at this stage, Plaintiff's allegations of having engaged in protected activity are sufficient.

pled a *prima facie* case of retaliation under the more stringent federal standards, those allegations similarly plead a *prima facie* case under the more liberal NYSHRL retaliation standard.

Accordingly, Plaintiff's retaliation claims survive and will be allowed to proceed.

## V.    CONCLUSION

Accordingly, the Court hereby

**ORDERS** that Defendants' motion to dismiss, Dkt. No. 23, is **GRANTED IN PART AND DENIED IN PART**; and the Court further

**ORDERS** that Plaintiff's first cause of action for disability discrimination under the ADA and NYSHRL is **DISMISSED without prejudice**; and the Court further

**ORDERS** that Plaintiff's second cause of action for age discrimination under the ADEA and NYSHRL is **DISMISSED without prejudice**; and the Court further

**ORDERS** that Plaintiff's fourth cause of action for discrimination and retaliation under NYCHRL is **DISMISSED without prejudice**; and the Court further

**ORDERS** that the Clerk serve a copy of this Memorandum-Decision and Order on the parties in accordance with the Local Rules.[9]

**IT IS SO ORDERED.**

Dated: March 24, 2025
      Albany, New York

Anne M. Nardacci
U.S. District Judge

---

[9] The Clerk shall also provide Plaintiff with copies of all unreported decisions herein.